HMG/TMF:USAO #2010R00024

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 NOV 20

CLERK'S OFFICE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** JFM-12-0608 |
| | : | |
| **v.** | : | **(Conspiracy to Commit Access Device** |
| | : | **Fraud, 18 U.S.C. § 1029(b)(2); Access** |
| **OLUMIDE ALADETOHUN,** | : | **Device Fraud, 18 U.S.C. § 1029(a)(2),** |
| | : | **(a)(3); Aggravated Identity Theft, 18** |
| **a/k/a "LOU,"** | : | **U.S.C. § 1028A)** |
| | : | |
| **Defendant.** | : | **UNDER SEAL** |
| | : | |

...oOo...

## INDICTMENT

## COUNT ONE

The Grand Jury for the District of Maryland charges:

## INTRODUCTION

At times relevant herein:

1.      Defendant **OLUMIDE ALADETOHUN ("LOU")** lived in Baltimore, Maryland.

2.      **LOU** registered Renovated Housing Solutions Inc. ("Renovated Housing") and Proverbs Investments LLC ("Proverbs") with the State of Maryland, stating that these businesses were created to rent and sell property and real estate.

3.      **LOU** used a Sprint cellular telephone with the phone number (410) 262-7816.

4.      The State of Maryland provided unemployment benefits to Maryland residents who were involuntarily terminated from their employment and met certain other requirements, including having sufficient wages prior to the termination of employment.

5.      The Maryland Department of Labor, Licensing and Regulation ("DLLR") administered unemployment benefit programs for the State of Maryland, reviewed applications for unemployment benefits, and arranged for payments to individuals entitled to unemployment benefits.

6.      DLLR's headquarters was located in Baltimore City, Maryland, and it handled telephone and in-person service at its headquarters.  DLLR had additional customer service centers that handled telephone inquiries in Baltimore County, Wicomico County, Prince George's County, and Allegany County.

7.      Employers in Maryland were required to submit DLLR quarterly contribution reports that listed, among other items, the individual employees who worked for the business and the amount of wages they were paid. The business was also required to remit unemployment taxes to DLLR within one month following the end of each quarter.

8.      DLLR relied on the truthfulness of the quarterly contribution report submitted by the former employer to verify wages and thus a claimant's eligibility for unemployment insurance benefits.

9.      DLLR entered into a contract with Citi Prepaid Services ("Citi") pursuant to which Citi issued prepaid VISA debit cards, which were funded by the State of Maryland with unemployment benefits, to unemployment insurance beneficiaries across Maryland.

10.      Citi mailed the debit cards to unemployment insurance beneficiaries by the U.S. mail and by commercial interstate carriers such as United Parcel Service ("UPS").

11.      Unemployment insurance beneficiaries had to affirm their eligibility for continuing benefits to DLLR on a bi-weekly basis -- either in person, by telephone, or over the Internet.

-2-

12.     DLLR authorized continuing benefits by arranging for the State of Maryland to pay Citi, which in turn placed additional funds on the beneficiary's debit card.

13.     Recipients of Maryland unemployment insurance benefits were able to use the debit cards at retailers and merchants, or use the debit cards to withdraw cash at automated teller machines (ATMs).

## THE CONSPIRACY AND ITS OBJECTS

14.     From a date unknown to the Grand Jury, but beginning at least in or about December 2009, and continuing at least until in or about February 2011, in the District of Maryland and elsewhere,

### OLUMIDE ALADETOHUN,
### a/k/a "LOU,"

the defendant herein, did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, to commit certain offenses against the United States, namely, to knowingly and with the intent to defraud, use and traffic in unauthorized access devices and obtain more than $450,000, in violation of 18 U.S.C. § 1029.

## METHODS AND MEANS

15.     It was part of the conspiracy that **LOU** obtained the means of identification of other individuals, including the names, dates of birth, and social security numbers of Maryland residents.

16.     It was part of the conspiracy that **LOU** prepared and filed, and caused to be prepared and filed, fraudulent quarterly contribution reports, which listed individuals as having worked for Renovated Housing and Proverbs when **LOU** knew (a) the employees had not earned and had not been paid the salary listed on the reports and (b) some of the alleged employees had

-3-

never worked for either company.

17.     It was further part of the conspiracy that **LOU** contacted DLLR and used a means of identification, to wit: the name, date of birth, and social security number of another person, to fraudulently apply for unemployment insurance benefits.

18.     It was further part of the conspiracy that **LOU** and his co-conspirators used telephones to contact Citi and fraudulently represent that they were individuals entitled to unemployment benefits.

19.     It was further part of the conspiracy that **LOU** fraudulently used mailing addresses associated with **LOU's** business properties when applying for unemployment benefits in other individuals' names.

20.     It was further part of the conspiracy that **LOU** received debit cards that the State of Maryland had caused to be issued in the names of other persons.

21.     It was further part of the conspiracy that **LOU** used debit cards issued in the names of other persons to withdraw cash at automated teller machines ("ATMs").

22.     It was further part of the conspiracy that **LOU** used money for his own benefit that the State of Maryland had intended to benefit unemployed persons eligible to receive unemployment benefits.

## OVERT ACTS

23.     In furtherance of the conspiracy, and to effect the objects thereof, at least one of the co-conspirators herein committed or caused to be committed at least one of the following acts, among others, in the District of Maryland, and elsewhere.

24.     <u>Maryland Resident With The Initials AN</u>:

a.      On or about September 25, 2010, **LOU** filed fraudulent quarterly contribution reports on behalf of Proverbs Investment LLC for the third and fourth quarter of 2009 and the first and second quarters of 2010, which listed AN as having worked for the company during those four quarters and having been paid a total of $33,000 total during those four quarters.

b.      On or about October 7, 2010, at **LOU's** direction, AN called DLLR via phone, and filed for unemployment benefits, providing DLLR with AN's means of identification, including AN's name, date of birth, and social security number, and falsely representing AN's income and duration of employment for Proverbs.

c.      On or about October 19, 2010, AN received a debit card with AN's name at 4624 York Road, Baltimore, Maryland 21212.

d.      On or about October 26, 2010, **LOU** and AN used AN's debit card to withdraw $726 in unemployment benefits from an ATM located at 5910 York Road, Baltimore, Maryland 21212.

e.      On or about November 23, 2010, **LOU** used AN's debit card to withdraw $503 in unemployment benefits from an ATM located at 5700 Baltimore National Pike, Baltimore, Maryland 21228, and $214 in unemployment benefits from an ATM located at 12 E. 25th Street, Baltimore, Maryland 21218.

f.      On or about December 21, 2010, **LOU** used AN's debit card to withdraw $716 in unemployment benefits from an ATM located at 728 Frederick Road, Catonsville, Maryland 21228.

g.      On or about January 19, 2011, **LOU** caused AN to contact Citi to request a replacement debit card.

h.      On or about January 24, 2011, AN received a debit card with AN's name at 4624 York Road, Baltimore, Maryland 21212.

i.      On or about January 25, 2011, **LOU** and AN used AN's debit card to withdraw $716 in unemployment benefits from an ATM located at 6340 York Road, Baltimore, Maryland 21212.

j.      On or about February 3, 2011, **LOU** and AN used AN's debit card to withdraw $716 in unemployment benefits from an ATM located at 6340 York Road, Baltimore, Maryland 21212.

25.     Maryland Resident With The Initials SJ:

a.      In or about August 2010, **LOU** filed fraudulent quarterly contribution reports for Renovated Housing, which listed SJ as having worked for Renovated Housing during the first and second quarters of 2010 and having been paid $16,000 total during those time periods.

b.      On or about October 29, 2010, **LOU** caused an unemployment claim to be filed with DLLR using the name of SJ, as well as her date of birth and social security number, and falsely claiming SJ had worked for Renovated Housing when in fact **LOU** knew she had not so worked.

c.      On or about November 10, 2010, **LOU** received a debit card with SJ's name at

-6-

2623 Boone Street, Baltimore, Maryland 21218.

      d.     On or about November 13, 2010, **LOU** used the debit card bearing SJ's name to withdraw $343 in unemployment benefits from an ATM located at Golden Ring Plaza, located in Baltimore, Maryland.

      e.     On or about November 16, 2010, **LOU** caused a co-conspirator to use his cell phone number of (410) 262-7816 to contact Citi, and claim that the previously issued debit card had been fraudulently used, request that a new card be sent to 2725 Tivoly Avenue, Baltimore, Maryland 21218, and request that the account be funded again.

      f.     On or about November 19, 2010, **LOU** used the debit card bearing SJ's name to withdraw $503 in unemployment benefits from an ATM located at 776 East 25th Street, Baltimore, Maryland 21218.

      g.     On or about November 30, 2010, **LOU** used the debit card bearing SJ's name to withdraw $694 in unemployment benefits from an ATM located at 8230 Liberty Road, Windsor Mill, Maryland 21244.

      h.     On or about January 14, 2011, a co-conspirator contacted Citi and requested that a replacement debit card bearing SJ's name be sent to 2725 Tivoly Avenue, Baltimore, Maryland 21218.

      i.     On or about January 20, 2010, **LOU** used the debit card bearing SJ's name to withdraw $684 in unemployment benefits from an ATM located at 1405 East Cold Spring Lane, Baltimore, Maryland 21239.

      26.     <u>Maryland Resident With The Initials SM</u>:

      a.     On or about September 25, 2010, **LOU** filed fraudulent quarterly contribution

-7-

reports for Proverbs, which listed SM as having worked for Proverbs during the third and fourth quarters of 2009 and the first and second quarters of 2010 and having been paid $33,000 total during those time periods.

       b.      On or about October 20, 2010, **LOU** caused an unemployment claim to be filed with DLLR using the name of SM, as well as her date of birth and social security number, and falsely claiming SJ had worked for Proverbs when in fact he knew she had not so worked.

       c.      On or about October 20, 2010, **LOU** received a debit card with SM's name at 2732 Harford Road, Apt. 1, Baltimore, Maryland 21218.

       d.      On or about December 7, 2010, **LOU** used the debit card bearing SM's name to withdraw $400 in unemployment benefits from an ATM located at 601 East 33rd Street, Baltimore, Maryland 21218.

       e.      On or about December 7, 2010, **LOU** used the debit card bearing SM's name to withdraw $314 from an ATM located at 6340 York Road, Baltimore, Maryland 21212.

       f.      On or about December 21, 2010, **LOU** used the debit card bearing SM's name to withdraw $716 in unemployment benefits from an ATM located at 12 East 25th Street, Baltimore, Maryland 21218.

       g.      On or about January 4, 2011, **LOU** used the debit card bearing SM's name to withdraw $600 and $116 in unemployment benefits from a PNC ATM located at 728 Frederick Road, Catonsville, Maryland 21228.

       h.      On or about January 22, 2011, **LOU** used the debit card bearing SM's name to withdraw $704 in unemployment benefits from an ATM located at 1405 East Cold Spring Lane, Baltimore, Maryland 21239.

    i.      On or about February 3, 2011, **LOU** used the debit card bearing SM's name to withdraw $720 in unemployment benefits from an ATM located at 601 East 33 Street, Baltimore, Maryland 21218.

18 U.S.C. § 1029(b)(2)
18 U.S.C. § 2

## COUNT TWO

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1-13 and paragraphs 15-22 of Count One of this Indictment, are hereby incorporated by reference as though fully set forth herein.

2.      On or about December 21, 2010, in the District of Maryland and elsewhere,

### OLUMIDE ALADETOHUN,
### a/k/a "LOU,"

the defendant herein, did knowingly and with the intent to defraud, use one or more unauthorized access devices, to wit: prepaid debit cards issued by Citi in the names of the individuals with the initials AN, SM, and SJ, and during the one year period beginning on or about June 1, 2010 and continuing until on or about June 1, 2011, obtain more than $1,000, in and affecting interstate commerce.

18 U.S.C. § 1029(a)(2)
18 U.S.C. § 2

## COUNT THREE

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1-13 and paragraphs 15-22 of Count One of this Indictment, are hereby incorporated by reference as though fully set forth herein.

2.      On or about November 23, 2010, in the District of Maryland and elsewhere,

### OLUMIDE ALADETOHUN,
### a/k/a "LOU,"

the defendant herein, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person; to wit, **ALADETOHUN** transferred, possessed, and used the name and access device (ending in 6109) of another person with the initials AN, during and in relation to (a) a Conspiracy to Commit Access Device Fraud, 18 U.S.C. § 1029(b)(2), as alleged in Count One of this Superseding Indictment; (b) Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(2), as alleged in Count Two of this Indictment.

18 U.S.C. § 1028A(a)(1), (c)(4)
18 U.S.C. § 2

## COUNT FOUR

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1-13 and paragraphs 15-22 of Count One of this Indictment, are

hereby incorporated by reference as though fully set forth herein.

2.      On or about January 4, 2011, in the District of Maryland and elsewhere,

### OLUMIDE ALADETOHUN,
#### a/k/a "LOU,"

the defendant herein, did knowingly transfer, possess, and use, without lawful authority, a means

of identification of another person; to wit, **ALADETOHUN** transferred, possessed, and used the

name and access device (ending in 6153) of another person with the initials SM, during and in

relation to (a) Conspiracy to Commit Access Device Fraud, 18 U.S.C. § 1029(b)(2), as alleged in

Count One of this Superseding Indictment; (b) Access Device Fraud, in violation of 18 U.S.C. §

1029(a)(2), as alleged in Count Two of this Indictment.


18 U.S.C. § 1028A(a)(1), (c)(4)
18 U.S.C. § 2

## FORFEITURE

1.      Paragraphs 1-13 and paragraphs 15-22 of Counts One are hereby incorporated by reference as though fully set forth herein.

2.      As a result of the offense set forth in Counts One through Four, the defendant,

### OLUMIDE ALADETOHUN,
### a/k/a "LOU,"

shall forfeit to the United States all property constituting, derived from, or traceable to the gross proceeds obtained directly or indirectly as a result of these offenses, including but not limited to $450,000.

## SUBSTITUTE ASSETS

If any of the $450,000 described in this indictment as being subject to forfeiture, as a result of any act or omission of the defendants

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code § 982(b) and 21

U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of

$450,000.


18 U.S.C. § 982
21 U.S.C. § 853
18 U.S.C. § 1029(c)


_____
ROD J. ROSENSTEIN
UNITED STATES ATTORNEY


A TRUE BILL:

**SIGNATURE REDACTED** ___      11/20/12
Foreperson                          Date

-14-